UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
ACCURATE GRADING QUALITY
ASSURANCE, INC. and ELECTRONIC :
SALES DEALER NETWORK, INC.,
:
                Plaintiffs,                      12 Civ. 1343 (ALC)

   -against-                                :        **OPINION AND ORDER**

JOHN THORPE AND KGK JEWELRY LLC,
:
                Defendants.
:
------------------------------------------------------------X

**ANDREW L. CARTER, United States District Judge:**

    Defendant John Thorpe ("Thorpe") seeks to dismiss the complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Dkts. No. 30, 42). Defendant KGK Jewelry ("KGK") and Thorpe (collectively, "Defendants") additionally seek dismissal of the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and, in the alternative, move to strike certain allegations incorporated into the Amended Complaint, pursuant to Fed. R. Civ. P. 12(f) (Dkt. No. 52). For the reasons below, Thorpe's first motion to dismiss for lack of personal jurisdiction is denied as moot and Thorpe's renewed motion to dismiss is denied. Defendants' motion to dismiss under 12(b)(6) is granted in part.

BACKGROUND

    Plaintiffs Accurate Grading Quality Assurance, Inc. ("Accurate Grading") and Electronic Sales Dealer Network, Inc. ("ESDN") (together, "Plaintiffs") brought suit against Defendants alleging copyright infringement and a myriad of related state-law claims. Plaintiffs provide Internet-based marketing for the jewelry industry. Thorpe, a former employee of Accurate

1

Grading and a continued shareholder of ESDN, is individually alleged to have breached his contract and fiduciary duty for sharing trade secrets with Plaintiffs' former client, KGK. Thorpe is a resident of Missouri. Plaintiffs also allege intentional interference of contract against KGK and allege copyright infringement, misappropriation of trade secrets, unfair competition, and unjust enrichment against both Defendants.

Defendants' motion for dismissal pursuant to 12(b)(6) is unopposed.[1] Thorpe's motion for dismissal for lack of personal jurisdiction is partially opposed. I will review the 12(b)(2) motion first. *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963) ("Not only does logic compel initial consideration of the issue of jurisdiction over the defendant—a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim—but the functional difference that flows from the ground selected for dismissal likewise compels considering jurisdiction and venue questions first."); *Phoenix-Dolezal v. Lili Ni*, No. 11 Civ. 3722(LAK)(JLC), 2012 WL 121105, at *4 (S.D.N.Y. Jan. 17, 2012) (Report and Recommendation). This is also prudent as the motions have different consequences for a litigant, for instance, the plaintiff's ability to re-file a claim. *Arrowsmith*, 320 F.2d at 221 ("A dismissal for lack of jurisdiction or improper venue does not preclude a subsequent action in an

---

[1] It is true that Plaintiffs did file a motion in opposition to Defendants' motion (Dkt. No. 55). However, this filing is filing is the same as a previous submission in form and substance, namely, Plaintiffs' Opposition to Thorpe's Renewed Motion to Dismiss the Amended Complaint for Lack of Subject Matter Jurisdiction. (Dkt. No. 46). On July 30, 2012, this court ordered any opposition to Defendant's 12(b)(6)/12(f) Motion be filed by August 31. At a status conference on September 7, this Court gave Plaintiff an on-the-record extension until September 14 to file an opposition. At no point has the Court received any requests to re-file, not that the request, given this Court's on-the-record extension of a past-due motion, would be granted. Thus, the motion is unopposed.

appropriate forum, whereas a dismissal for failure to state a claim upon which relief can be granted is with prejudice.")

DISCUSSION

I. Motion for Lack of Personal Jurisdiction (Dkt. No. 42)

It is undisputed that Thorpe is a Missouri resident. As its basis for personal jurisdiction over Thorpe for this action in New York, Plaintiffs argue that Thorpe attended four meetings in New York. The first meeting was in August 2011, when Thorpe while still an Accurate Grading employee, visited KGK, Plaintiffs' client, "to provide the KGK developers with in-person instructions and guidance" on linking to Plaintiffs' databases. (Yeko Decl. ¶ 40). Thorpe also visited New York twice in December 2011 and once in February 2012 to attend meetings in conjunction with KGK's bids for a new jewelry venture with a Danish jewelry executive ("Newco venture") (Am. Compl. ¶ 35(j); Dkt. No. 25, Thorpe Decl. ¶ 61). Plaintiffs also claim an agency relationship exists between KGK and Thorpe because Thorpe acted in concert with KGK, a New York entity.

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing jurisdiction. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). In the absence of jurisdictional discovery, "allegations of jurisdictional fact must be construed in the light most favorable to the plaintiff." *National Union Fire Ins. Co. of Pittsburgh, PA. v. BP Amoco P.L.C.*, 319 F. Supp. 2d 352, 357 (S.D.N.Y. 2004) (citing *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986). Thus, "[w]here, as here, a court relies on pleadings and affidavits," *Wickers Sportswear, Inc. v. Gentry Mills, Inc.*, 411 F. Supp. 2d 202, 205 (E.D.N.Y. 2006), the complaint need "only allege facts constituting a prima facie showing of personal jurisdiction." *National Union*, 319 F. Supp. 2d at 357 (citation omitted)). The Court,

however, "will not draw 'argumentative inferences' in the plaintiff's favor" and need not "accept as true a legal conclusion couched as factual allegation. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 673 F.3d 50, 59 (2d Cir. 2012) (internal citations omitted).

Absent a statutory provision allowing for nationwide jurisdiction, where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules. *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). A New York court may exercise personal jurisdiction over an out-of-state defendant if "New York law would confer upon its courts the jurisdiction to reach the defendant" and, so finding, if "extension of jurisdiction is permissible under the Due Process Clause of the Fourteenth Amendment. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120, 124 (2d Cir. 2003).

To establish personal jurisdiction over a defendant under New York law, a plaintiff must "demonstrate either that the defendant was 'present' and 'doing business' in New York within the meaning of [CPLR] § 301, or that the defendant committed acts within the scope of New York's long-arm statute, [CPLR] § 302." *Schultz v. Safra Nat. Bank of New York,* 377 Fed. Appx. 101, 102 (2d Cir. 2010). Plaintiffs have not opposed Thorpe's argument that general jurisdiction does not exist under CPLR § 301. The Court finds that general jurisdiction under CPLR § 301 has not been established since there is no indication that Thorpe is engaged in a continuous or systematic course of doing business in New York. *A.W.L.I. Group, Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 564 (E.D.N.Y. 2011). Only the arguments for jurisdiction under CPLR § 302(a)(1)-(3) need be addressed.[2]

---

[2] CPLR § 302(a) states in relevant part:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary. . . who in person or through an agent:

CPLR § 302 is New York's "long-arm" statute permitting jurisdiction over an out-of-state defendant. It is axiomatic that Section 302(a) provides only specific jurisdiction" over a non-domiciliary defendant arising out of particular acts. *Roe v. Arnold*, 502 F. Supp. 2d 346, 350 (E.D.N.Y. 2007).

As an initial matter, Thorpe's first Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 30) is denied as moot in light of Thorpe's Renewed Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 42).

Agency Jurisdiction

Plaintiffs contend that this Court has personal jurisdiction over Thorpe "through an agent" under any of the provisions of § 302 because Thorpe acted in concert with KGK, an undisputed New York entity. However, to claim an agency relationship sufficient under § 302, plaintiffs must allege an agency relationship. Even though courts look to the "realities of the relationship" rather than formal principles of agency law, "[t]o be considered an agent for jurisdictional purposes, the alleged agent must have acted in the state for the benefit of, and with

---

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. . .

CPLR § 302 (emphasis added)

5

the knowledge and consent of the non-resident principal." *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986) (internal quotations and citations omitted).

At a minimum, agency requires the defendant's agent took actions in New York or transacted business in New York for the benefit of the defendant. *See Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 466 (N.Y. 1988). Thus, in this case, KGK—the New York entity—would have to be acting for Thorpe's benefit. But Plaintiffs do not adequately allege such a relationship. Rather, they alleged Thorpe's "grudging" involvement to provide services to KGK. To the extent they connect KGK and Thorpe, Thorpe would be deemed the agent, not KGK. Plaintiffs' alternate concerted action theory—that Thorpe "acted in conjunction" with KGK—is similarly fruitless.

While "[t]he acts of a co-conspirator may . . . be attributed to a defendant for the purpose of obtaining personal jurisdiction over that defendant, the bland assertion of conspiracy . . . is insufficient to establish jurisdiction for the purposes of § 302(a)(2)." *Drucker Cornell v. Assicurazioni Generali S.p.A. Consolidated*, No. 97 CIV. 2262(MBM), 98 CIV. 9186(MBM), 2000 WL 284222, 5 (S.D.N.Y. Mar. 16, 2000) (internal citations omitted); *Laborers Local 17 Health and Ben. Fund v. Philip Morris, Inc.*, 26 F.Supp.2d 593, 601 (S.D.N.Y. 1998) ("Before jurisdiction based on a conspiracy can be upheld under New York law, ... the plaintiff must allege both a prima facie case of conspiracy and allege specific facts warranting the inference that the defendants were members of the conspiracy.") Plaintiffs have not pled a prima facie conspiracy claim and the vague allegations are not sufficient to establish personal jurisdiction over Thorpe through KGK.

Analysis Under § 302(a)

Plaintiffs' clearest path to an assertion of personal jurisdiction is under 302(a)(1). "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citing *McGowan v. Smith,* 52 N.Y.2d 268, 273, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981)). A claim "aris[es] from" a particular transaction when there is "some articulable nexus between the business transacted and the cause of action sued upon," *McGowan,* 52 N.Y.2d at 272, 437 N.Y.S.2d 643, 419 N.E.2d 321, or when "there is a substantial relationship between the transaction and the claim asserted," *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988). *Id.* (internal citations omitted).

No one particular act will necessarily determine the existence of a transaction within the scope of the statute, a defendant's New York activities. *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380, 849 N.Y.S.2d 501, 505, 880 N.E.2d 22, 26 (N.Y. 2007) (primary consideration is "quality of the defendants' New York contacts"). The transaction, at minimum, must be a purposeful act by which the defendant avails itself of the benefits and protections of New York's laws. *Id.*

Here, Thorpe attended the August 2011 meeting on behalf of Plaintiffs. It would be unjust to call his presence in New York purposeful when he was there precisely at Plaintiffs' behest. The Newco meetings are another story. While Thorpe downplays the significance, Plaintiffs allege that in advance of these meetings, Yeko shared his "playbook" with the Newco participants, which includes Plaintiffs' alleged confidential and proprietary information. (*See* Yeko Decl. ¶¶ 100-114). Unlike the August 2011 meeting on behalf of Plaintiffs, the December Newco meetings reflect a purposeful act to be present in New York. At this stage, we only have to establish whether Plaintiffs have adequately alleged jurisdiction not whether the underlying

7

torts were committed. It is of little moment that the Newco venture was ultimately a failed one which did not end in a business transaction or contract. *Cavu Releasing, LLC. v. Fries*, 419 F.Supp.2d 388, 393 (S.D.N.Y. 2005) ("Even though the negotiations did not result in an executed contract, it is well settled that contract negotiations in New York will satisfy Section 302(a)(1) 'if the discussions substantially advanced or were essential to the formation of the contract or advanced the business relationship to a more solid level.'") (citations omitted). The fact that Thorpe came to New York three times over a three-month period to engage in discussions about the Newco venture shows that he hoped to advance the business relationship. Indeed, as Plaintiffs allege, part of Thorpe's rationale in working with KGK was to explore possible new ventures, including Newco. (Am. Compl. ¶ 35(h)). Thus, Thorpe intended to avail himself of the benefits and protections of New York's laws." Plaintiffs' allegations about the Newco meetings in New York have a substantial relationship to the claims asserted by Plaintiffs. Thus, jurisdiction is possible under § 302(a)(1).

Due Process

Having determined that the New York long-arm statute would extend the state's jurisdiction over the defendant in this case, the next issue is whether the exercise of this jurisdiction comports with federal due process. To do so, we undertake an analysis consisting of two components: the "minimum contacts" test and the "reasonableness" inquiry. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.1996)).

The required minimum contacts are met where the defendant "purposefully availed" itself of the privilege of doing business in the forum and could foresee being "haled into court" there. *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 152 (2d Cir.

2001) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). A court must then determine whether the assertion of personal jurisdiction "comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable under the circumstances of a particular case." *U.S. Titan,* 241 F.3d at 152.

Whether it is "reasonable" to exercise jurisdiction in a particular case depends on "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.* at 152 (citation omitted). The import of the "reasonableness" inquiry varies inversely with the strength of the "minimum contacts" showing-a strong (or weak) showing by the plaintiff on "minimum contacts" reduces (or increases) the weight given to "reasonableness." *Bank Brussels,* 305 F.3d at 129 (citation omitted).

Thorpe purposefully availed himself of the New York market when he came for three Newco meetings, obviously with the hope that the plans would succeed and the venture would go forward. The fact that the venture was ultimately unsuccessful does not change the fact that he purposely availed himself with the preparations and negotiations in New York. Given that a cross-national venture was being negotiated in New York, Thorpe should have known that he could be haled into court there if the proposed venture had ended less than amicably. Thus, Thorpe had minimum contacts in New York.

The reasonableness factors are also satisfied. Given his frequent visits to New York in a three-month period, it cannot be said that there would be a serious burden on Thorpe to attend to

proceedings here. The desire to prevent infringement of any statutory and common-law rights furthers substantial social policies. The fact that there is another defendant who is under jurisdiction in New York will assist in the most efficient resolution of this case in the same forum. While the interests of New York state are not well-established at this time, given that the Newco venture never materialized and Plaintiffs' economic losses here are speculative, perhaps with the assistance of jurisdictional discovery there will be a showing of a significant interest. On balance, I find that the exercise of jurisdiction over Thorpe reasonable at this time.

I. <u>Motion to Dismiss Amended Complaint & Motion to Strike (Dkt. No. 52)</u>

An unopposed motion to dismiss a complaint for failure to state a claim does not merit automatic dismissal. In such a situation, "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322-323 (2d Cir. 2000). As with all Rule 12(b)(6) motions, on an unopposed motion to dismiss, a court is to "assume the truth of a pleading's factual allegations and test only its legal sufficiency." *Id.* at 322. If a complaint is sufficient to state a claim on which relief can be granted on its face, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal. *Id.* at 323.

Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a claim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"In considering a motion to dismiss, the Court may consider documents attached as an exhibit thereto or incorporated by reference, documents that are "integral" to plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken. *Thomas v. Westchester County Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (internal citations omitted). To incorporate a document by reference, "the Complaint must make a clear, definite and substantial reference to the document[ ]." *Id.* at 275-76 (S.D.N.Y. 2002). Moreover, "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the defendant may produce [the document] when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure." *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (on a motion to dismiss, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."). Notably, a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough. *Id.*

Plaintiffs' Amended Complaint relies heavily on declarations from John Thorpe (Dkt. No. 25) and Allan Bloom (Dkt. No. 26), submitted in support of Defendants' Opposition to Preliminary Injunction (*see* Am. Compl. ¶¶ 35(a)-(j), 36(a)-(d)). In his declaration, however, Thorpe also denies copying any aspect of ESDN's system, including images, in the creation of

11

his cloud-based kiosk system. (Dkt. No. 25 ¶¶ 50-53). Furthermore, Bloom avers that the images were the property of KGK. (Dkt. No. 26 ¶¶ 39-40).

While Plaintiffs have stopped short of incorporating these documents by reference, the Amended Complaint in fact summarizes the very paragraphs that contradict Plaintiffs' allegations. *Compare* Am. Compl. ¶ 35(i) *with* Dkt. No. 25 ¶¶ 50-53. Furthermore, these declarations were filed on this case docket *prior to* the filing of Plaintiffs' amended complaint and then paraphrased therein. Thus, consideration of these declarations, on a Rule 12(b)(6) motion, in their entirety is proper. *See Cortec*, 949 F.2d at 48 ("A finding that plaintiff has had notice of documents used by defendant in a 12(b)(6) motion is significant since . . . the problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered.") The issue of notice is a "significant one" because "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Id.*

Plaintiffs allege original federal jurisdiction over all of their claims pursuant to § 1331 (for copyright infringement) and pursuant to § 1332 (for misappropriation of trade secrets; unfair competition, unjust enrichment, breach of contract, intentional interference with contract and breach of fiduciary duty).

A. "Arising-Under" Jurisdiction Claim (28 U.S.C. § 1331): Copyright Infringement

Plaintiffs' complaint is insufficient as to their claim for copyright infringement. In relevant part, the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, provides:

> "[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title. In any case, however, where the deposit,

application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights. . ."

17 U.S.C. § 411(a)

While not a strictly jurisdictional requirement, section § 411(a) nonetheless requires copyright registration as a precondition to a copyright claims. *Reed Elsevier, Inc. v. Muchnick*, 130 S.Ct. 1237, 1247 (2010). On the face of the complaint, Plaintiffs do not allege existence of a valid copyright. They have likewise failed to allege that they have previously sought registration and been denied. *See id.* at 1246 (noting that § 411(a) allows courts to adjudicate infringement claims involving unregistered works where the holder attempted to register the work and registration was refused). Plaintiffs allege infringement of a "legally protected image" or "legally protected information," but these phrases are nothing more than self-serving and conclusory statements when they notably stop short of alleging that Plaintiffs had copyright protection or had sought copyright protection and been refused at the time of the complaint.

Even if these vague allegations were enough to allege copyright protection, such a contention is belied by their acknowledgement in a previous submission to this Court that they had "only recently applied for registration of the works at issue here." (Dkt. No. 14, at 10). An inference of copyright registration is not reasonable when the Plaintiffs themselves have refuted it. Furthermore, mere application is legally insufficient as "[c]ourts in this Circuit. . . require[] that a plaintiff either hold a valid copyright registration outright or have applied and been refused a registration *prior* to filing a civil claim," thus "[a] pending application does not suffice." *Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, No. 09 CV 2669, 2012 WL

1021535, at *5 (S.D.N.Y. Mar. 6, 2012) (collecting cases). Thus, any pending application cannot support their tenuous copyright claim, even if registration is later obtained. *Id.* at *5 ("registration requirement is a *prerequisite* to these civil claim" so subsequent registration is "of no consequence") (emphasis in original). Because Plaintiffs' complaint does not adequately allege that they have satisfied this "precondition to filing a claim," *Reed Elsevier*, 130 S.Ct. at 1247, their claim is necessarily barred and must be dismissed. *Muench Photography*, 2012 WL 1021535, at *5 ("It remains the law in this Circuit that § 411(a) imposes a bar to copyright infringement claims where a plaintiff has not either received or been denied a copyright registration at the time such a claim is interposed.")

    B. Diversity Jurisdiction Claims (28 U.S.C. § 1332)

Plaintiffs also claim diversity jurisdiction over their state-law claims. I consider each claim in turn.

As discussed above, Plaintiffs reference the Thorpe and Bloom declarations in their complaint. This finding is significant as to Plaintiffs' misappropriation of trade secrets, unfair competition and breach of contract claims where the incorporated declarations contradict the allegations necessary to state a claim.

A court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice. *In re Livent, Inc. Noteholders Securities Litigation*, 151 F. Supp. 2d 371, 405-406 (S.D.N.Y. 2001) (collecting cases). Thus, when the facts alleged by the plaintiff are "so contradictory that doubt is cast upon their plausibility," the court may "pierce the veil of the complaint's factual allegations ... and dismiss the claim." *Shabazz v. Pico*, 994 F. Supp. 460,